UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,                    1:16-CR-75 RJA

                                             DECISION AND
                                             ORDER

        v.

XIAOJIE SHUN a/k/a Lucy,
and LIZHONG SHEN a/k/a Tony,

                Defendant.

_____


## INTRODUCTION

        Before the Court is defendant Xiaojie Shun's motion for various forms of relief based on alleged violations of her Sixth Amendment rights (Dkt. No. 186); the Government's motion to introduce evidence of other crimes, wrongs, or bad acts (Dkt. Nos. 184, 185); defendant Shun's motion for immediate disclosure of *Jencks*, *Brady* and *Giglio* materials (Dkt. No. 191); and defendant Shun's motion for immediate disclosure of grand jury materials (Dkt. No. 190). Also before the Court is defendant Lizhong Shen's renewal of his previous motion to dismiss the indictment (Dkt. No. 204). For the following reasons, defendant Shun's motion for relief based on alleged Sixth Amendment violations is denied; the Government's motion to introduce evidence of other crimes, wrongs or bad acts is granted in part and denied in part; and Shun's request for immediate disclosure of *Jencks*, *Brady*, *Giglio* and grand jury materials is denied. As further set forth below, defendant Shen's renewal of his motion to dismiss the indictment is denied.

## BACKGROUND

Defendant Shun is charged, in a Superseding Indictment returned on June 28, 2018, with the following offenses: (1) Conspiracy to Defraud the United States from June 2008 through April 2010, in violation of Section 371 of Title 18 of the United States Code; (2) Subscribing to a False Tax Return on April 23, 2010, in violation of Section 7206(1) of Title 26 of the United States Code; (3) Aiding and Assisting in the Preparation of False Tax Return on or about September 17, 2012, in violation of Section 7206(2) of Title 26 of the United States Code; and (4) Subscribing to a False Tax return on or about April 15, 2013. (Dkt. No. 33) Defendant Shen is also charged with Conspiracy to Defraud the United States from June 2008 through April 2010.[1] (*Id.*)

Shun and Shen, residents of Williamsville, New York, were married prior to the events charged in this case through in or around January 2012. It is alleged that from in or around April of 2004 through in or around November of 2009, defendants jointly operated BTL International Co., Ltd. ("BTL"), a corporation that provided tour and travel services in Niagara Falls, New York. In or around November of 2009, defendants separated from their marriage and Shen stopped working for BTL. In or around January of 2011, Shun ceased operating BTL and began operating Niagara Falls Universal Inc. ("NFU"), a corporation that similarly provided tour and travel services in Niagara Falls, New York.

---

[1] The Superseding Indictment also charged Shen with Subscribing to a False Tax Return on April 23, 2010. (Dkt. No. 33, Count 3) On March 15, 2019, the Government moved to dismiss this Count and strike the first reference to Shen in Paragraph 21 of Count 1 of the Superseding Indictment. (Dkt. No. 77) The Court granted the Government's motion and issued an Order of Dismissal on March 18, 2019. (Dkt. No. 78)

With respect to Count 1, the Superseding Indictment alleges that, from June 2008 through April 2010, Shun and Shen knowingly and willfully conspired to defraud the United States by preventing the Internal Revenue Service ("IRS") from determining the proper amount of corporate tax owed by BTL as well as the proper amount of individual income tax owed jointly by Shun and Shen, through the filing of false or fraudulent tax returns. It is alleged that, in furtherance of the conspiracy, defendants: (1) provided false and fraudulent information to their accounting firm which understated gross receipts earned by BTL; (2) concealed from their accounting firm BTL's QuickBooks records, which maintained the true gross receipts of the business; (3) diverted funds from BTL for their own personal use; and (4) provided their accounting firm with false and fraudulent information regarding their personal income by concealing their diversion of funds from BTL for their personal use. The overt acts set forth in the Superseding Indictment include defendants' actions in causing false and fraudulent corporate and joint individual income tax returns to be filed on their behalf for the fiscal years ending in March 2008 and March 2009. The most recent overt act in furtherance of the conspiracy specifically set forth in the Superseding Indictment occurred on April 23, 2010, when Shun allegedly signed and submitted to the IRS a fraudulent joint individual income tax return in defendants' names for the 2009 tax year.

Count 2 charges Shun with willfully filing a false joint individual income tax return on April 23, 2010, for the 2009 tax year, by representing that she and Shen received $22,880 in income when she knew that they received substantially more income. Count 3 alleges that on September 17, 2012, Shun assisted in the preparation and filing of a false income tax return, on behalf of her business NFU, for the 2011 tax year. Specifically,

it is alleged that Shun represented that NFU received $55,010 in total gross receipts or sales despite knowing that the company received substantially more gross receipts and total income. Count 4 charges Shun with willfully filing a false individual income tax return on April 15, 2013, for the 2012 tax year, by representing that she received $38,000 in income despite knowing that she had received substantially more income.

## DISCUSSION

### *Shun's Motion for Relief Based on Violations of her Sixth Amendment Rights*

On July 22, 2021, IRS Criminal Investigation Division Special Agent Scott Simmons, together with another IRS special agent, visited the offices of Freed Maxick CPAs, P.C. and attempted to interview Certified Public Accountant Richard Wright, who had previously been identified by Shun as a potential expert witness for the defense in this case. (Dkt. No. 186) Wright was not present at the Freed Maxick office when Simmons and the other agent arrived. (*Id*.) The agents spoke with another employee of the accounting firm and requested that the employee instruct Wright to call the agents when he returned. (*Id*.) Wright called later that same day and spoke with Simmons and the other agent briefly on speaker phone. (*Id*.) Agent Simmons asked Wright some questions and inquired about documents pertaining to the case. (*Id*.) Wright informed Simmons that he believed defense counsel should be present for their communications and terminated the call. (*Id*.)

Defendant Shun contends that Agent Simmons' contact with Wright was a "willful and deliberate attempt to interfere with the effectiveness of her defense" in violation of her Sixth Amendment right to counsel. (Dkt. No. 186) Defendant requests various remedies because of this alleged violation, including that the Court: (1) order the

Government to produce information about the nature and purpose of Agent Simmons' visit to Freed Maxick and telephone conversation with Wright; (2) deem the income tax principles to which Wright is anticipated to testify about at trial as "accepted" for purposes of the trial and prohibit the Government from offering contradictory testimony; and (3) grant additional sanctions in the form of fees and reimbursements to defendant. (*Id*.)

In response to defendant's motion, the Government submits an affidavit from IRS Special Agent Simmons. (Dkt. No. 194-1) Therein, Simmons states that on July 22, 2021, he and another agent attempted to interview Wright regarding this case. (*Id*. at ¶¶2-3) Simmons wanted to know whether Wright was aware of the upcoming trial date in this matter and if Wright had knowledge of any discoverable documents.[2] (*Id*. at ¶3) Simmons avers that he knew he could not request any attorney work-product or privileged materials from Wright, and that he had no intention of making such requests. (*Id*. at ¶¶3, 11) During the call, Wright informed Simmons he was working with Shun's defense counsel, who had asked Wright to testify at trial about various provisions of the Internal Revenue Code. (*Id*. at ¶10) Simmons asked Wright if he reviewed any records or prepared any documents and Wright stated he had not. (*Id*. at ¶11) Wright also told Simmons that he had not received a trial subpoena. (*Id*. at ¶9) Agent Simmons affirmed that his telephone conversation with Wright lasted approximately three minutes. (*Id*. at ¶7) During oral argument of the motion, counsel for the Government further represented that the conversation between Wright and Simmons lasted only about three minutes, and that no privileged or confidential material was exchanged between them. (Dkt. No. 207, pg. 10)

---

[2] Agent Simmons further affirmed that had Wright been in possession of discoverable documents, he would not have requested the documents directly from Wright, but instead would have contacted counsel for the Government and advised counsel to obtain the documents through discovery. (*Id*. at ¶3)

Counsel for the Government also represented to the Court and defense counsel that no information or documents obtained as a result of the phone call would be offered at trial, nor would the Government be relying on, or introducing at trial, any statements made by Wright to Agent Simmons during the call. (*Id*.)

The Second Circuit has instructed that counsel for all parties have a right to interview an adverse party's witness, provided that the witness is willing, without either the presence or consent of opposing counsel and without a transcript being made. *International Business Machines Corp. v. Edelstein*, 526 F.2d 37, 42 (2d Cir. 1975). Such interviews are permitted because "[a] criminal trial is a quest for the truth [and] [t]hat quest will more often be successful if both sides have an equal opportunity to interview the persons who have the information from which the truth may be determined." *Id*. *See also United States v. Carrigan*, 804 F.2d 599, 603 (10th Cir. 1986) ("[W]itnesses in a criminal prosecution belong to no one, and …. subject to the witness' right to refuse to be interviewed, both sides have the right to interview witnesses before trial."); *United States v. Hyatt*, 565 F.2d 229, 232 (2d Cir. 1977) ("[W]e shall not tolerate the view that the government [or any other party] has some special right or privilege to control access to trial witnesses.").

Because the Government is permitted to interview willing defense witnesses in a criminal case, Agent Simmons' communications with Richard Wright, defendant's anticipated expert witness at trial, were neither inappropriate nor unlawful. Further, even if Agent Simmons had been prohibited from speaking with Wright, which he was not, it is apparent that no harm to defendant Shun arose from the contact. The conversation between Wright and the agents lasted approximately three minutes and the record

6

reflects that no substantive information about either the facts of the case or Wright's anticipated testimony was discussed. Agent Simmons has affirmed, under oath, that he did not request any privileged information or attorney work-product information, and that no documents were shared or exchanged. Likewise, counsel for the Government represented to both the Court and defendant that no information or documents were obtained during the phone conversation between Wright and Simmons, or as a result of the conversation, that the Government will seek to use at trial. *See United States v. Greber*, 760 F.2d 68 (3d Cir. 1985) ("We find no merit in the defendant's complaint that an F.B.I. agent interviewed a potential expert witness for the defense before trial…defendant has demonstrated neither impropriety nor injury[.]").[3]

For these reasons, the Court finds no violation of defendant Shun's Sixth Amendment right to effective assistance of counsel as a result of the agent's interview of a defense witness, and all relief Shun seeks based on these allegations is denied.

### *The Government's Motion to Introduce Evidence of Other Crimes, Wrongs or Bad Acts*

The Government moves to introduce evidence that Shun failed to file federal income tax returns for BTL for the fiscal years ending in March 2010 and March 2011. Specifically, the Government intends to show that Shun filed a final U.S. corporate tax return on December 17, 2009, indicating that BTL was no longer a functioning business entity. Further evidence will demonstrate that from November 1, 2009 through May 26,

---

[3] In response to the Government's statement that no information or documents were obtained during the meeting that would be used at trial, defense counsel responded that if "there was no other purpose to the contact other than to prepare for trial or this case…[i]f that's the case, then we're fine with it." (Dkt. No. 207, pg. 10) Counsel further stated "[i]f there is no use of it at trial, then we're satisfied at that stage that there's going to be no consequence." (*Id.*) Thus, defense counsel seems to conceded that no harm arose from the contact.

2011, Shun continued to operate BTL and deposited business receipts to a BTL business account at Key Bank. However, no federal income tax returns were filed on behalf of BTL for the fiscal years of 2010 and 2011.

Federal Rule of Evidence 402 provides that "all relevant evidence is admissible." Evidence is relevant if it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable." Fed. R. Evid. 401. Where uncharged criminal activity "arose out of the same transaction or series of transactions as the charged offense…[or] is inextricably intertwined with the evidence regarding the charged offense, or…is necessary to complete the story of the crime[s] for which a defendant is on trial, the evidence is considered direct evidence of the charged offenses." *United States v. Johnson*, 469 F. Supp. 3d 193 (SDNY Feb. 16, 2019); *quoting United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997) (internal citations omitted).

Here, the Court finds that Shun's failure to file federal corporate tax returns on behalf of BTL in 2010 and 2011 is inextricably intertwined with the charged offenses and is necessary to complete the story of the crimes for which Shun is on trial. The conspiracy charge alleges that Shun and Shen willfully prevented the IRS from accurately determining the amount of corporate income tax due and owing on behalf of BTL in 2008 and 2009. Approximately one month after Shun and Shen's separation in November of 2009, Shun filed a statement with the IRS stating that BTL was no longer a functioning business entity. Shun then started NFU, a new company which provided the very same tour and travel services as BTL. The Superseding Indictment alleges that Shun continued her fraud by assisting in the preparation of a false federal tax return on behalf of NFU for the 2011 tax year. In sum, Shun is charged with falsifying corporate tax returns from 2008

through 2011 in order to prevent the IRS from determining the correct amount of taxes due and owing from her businesses during that time. She is alleged to have engaged in this scheme or fraud while operating both BTL and NFU, two business entities which provided essentially the same services. Shun is also alleged to have engaged in this conduct over a continuous time period, with the exception of the 2010 fiscal tax year. Thus, Shun's failure to file *any* federal corporate tax return as to BTL in 2010, despite continuing to operate the business and depositing business receipts during that time, is an integral part of the crimes charged here and completes the story as to the ongoing nature of the scheme. Shun's failure to file a federal corporate tax return on behalf of BTL for the 2011 tax year is also an integral part of the crime, since it is alleged that Shun willfully assisted in the false preparation of a federal corporate tax return on behalf of NFU, essentially the very same business, during this same time. *See United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985) (evidence admissible where it "forms an integral and natural part of the account of the crime and is necessary to complete the story of the crime for the jury."). Because the Court finds that Shun's failure to file federal corporate tax returns on behalf of BTL in 2010 and 2011 is part of *res gestae* of the offenses charged in the Superseding Indictment, this evidence is admissible at trial as direct evidence of the charged crimes.

Moreover, the Court finds that even if evidence of Shun's failure to file federal corporate tax returns on behalf of BTL was not admissible as direct evidence of the crimes charged, it would still be admissible pursuant to Rule 404(b) of the Federal Rules of Evidence. Under the terms of Rule 404(b), the Court may permit the introduction of evidence of uncharged crimes if they are sufficiently probative of issues other than the

defendant's propensity to engage in criminal conduct. *See United States v. LaFlam*, 369 F.3d 153, 155-56 (2d Cir. 2004). "Other act" evidence is admissible under Rule 404(b) provided it: (1) is advanced for a proper purpose; (2) is relevant to the crime for which defendant is on trial; and (3) has a probative value that is not substantially outweighed by any unfair prejudicial effect. *United States v. Guang*, 511 F.3d 110, 121 (2d Cir. 2007). Proper purposes for the introduction of Rule 404(b) evidence include the establishment of motive, intent, or knowledge, as well as the absence of mistake or accident. *United States v. Birrell*, 447 F. 2d 1168, 1172 (2d Cir. 1971). The Second Circuit has repeatedly noted that its interpretation of Rule 404(b) has followed an inclusionary approach, and the only limitations are the prior crime be sufficiently probative on the issue for which it is to be introduced and its prejudicial effect cannot substantially outweigh its probative value. *United States v. Caputo*, 808 F.2d 963 (2d Cir. 1987).

As explained above, evidence of failure to file federal corporate tax returns on behalf of BTL is highly relevant and probative to the charged conduct, namely that Shun falsified federal corporate tax returns in order to prevent the IRS from determining the proper amount of taxes owed by her businesses. In addition, this evidence may be offered for a number of proper purposes under Rule 404(b). For instance, the evidence may be offered to demonstrate a common scheme or plan by Shun to prevent the IRS from discovering the correct amount of tax due from her business entities or to demonstrate that Shun was motivated by a desire to conceal the true amount of income received from her business. *See United States v. Birrell*, 447 F.2d 1168, 1172 (2d Cir. 1971) ("evidence of similar acts in fraud cases may be introduced where knowledge or intent is at issue, to give rise to an inference of knowledge or intent"); *United States v. Ellett*, 278 Fed. Appx.

82, 84-85 (2d Cir. 2008) ("A defendant's past taxpaying record is admissible under Federal Rule of Evidence 403 and 404(b) as circumstantial evidence of willfulness."). Further, the Government submits that its proof at trial will show that when Shun was interviewed by IRS agents on July 25, 2012, she denied responsibility for any errors that existed on her personal or corporate tax returns, and insisted that co-defendant Shen was responsible for coordinating and preparing their individual and corporate tax returns. Thus, evidence that Shun failed to file federal tax returns for BTL following her separation from Shen demonstrates that the charged conduct was not the result of mistake or accident, nor was it the fault of another party. *United States v. Zackson,* 12 F.3d 1178, 1182 (2d Cir. 1993) ("Where a defendant claimed that his conduct had an innocent explanation, prior act evidence is generally admissible to prove that the defendant acted with the state of mind necessary to commit the crime charged.").[4]

Lastly, the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. Not only is the evidence of failure to file federal tax returns on behalf of BTL in 2010 and 2011 highly probative of a number of issues in this case, but it is no more prejudicial to Shun than the crimes charged in the Superseding Indictment. Indeed, these crimes relate to submitting false tax returns to the IRS in an attempt to conceal income or prevent the IRS from making a proper tax assessment and are very similar in nature of the proposed Rule 404(b) evidence. *See United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990) (noting that other-act evidence is not unfairly

---

[4] Defendant argues that evidence of Shun's failure to file federal tax returns on behalf of BTL in 2010 and 2011 constitutes evidence of tax loss, which the Court has already precluded from the trial. This argument is without merit. Evidence of failure to file tax returns is probative of Shun's alleged attempt to prevent the IRS from determining the correct amount of taxes due from her and her businesses and is not evidence of tax loss.

prejudicial where it is not "any more sensational or disturbing than the crimes" for which defendant has been charged). Finally, the Court will provide a limiting instruction to the jury instructing them that this evidence may only be considered for a limited purpose, and that it may not be considered to show Shun's propensity to commit any of the crimes charged in the Superseding Indictment.[5]

In addition to submitting evidence regarding Shun's failure to file federal corporate tax returns on behalf of BTL for the 2010 and 2011 tax years, the Government also seeks to introduce evidence of Shun's failure to file New York state tax returns on behalf of BTL during this same time period. The Court does not reach the same conclusion with regard to the evidence regarding state tax returns. To begin, Shun is charged in a federal indictment with conspiring to prevent the IRS, a federal agency, from determining the correct amount of corporate and individual taxes due and owing from defendants as well as with submitting or helping to submit false tax returns to the same federal agency. Thus, the Court does not find Shun's conduct with regard to New York state tax requirements and laws to be "intrinsically intertwined" with the crimes charged in the Superseding Indictment. The Court also rejects the Government's request to introduce this evidence pursuant to Rule 404(b). The probative value is substantially outweighed by the risk of unfair prejudice in this instance. Specifically, evidence of Shun's failure to file New York state corporate tax returns is not highly probative of the federal crimes charged here, and would tend to confuse the jury. The Court also finds the evidence to be unnecessarily cumulative since the Government will be permitted to introduce evidence that Shun failed to file federal corporate tax returns on behalf of BTL during this same time period. *See*

---

[5] At the time of the trial, defendant and the Government should submit proposed limiting instructions to the Court.

Fed. R. Evid. 403 (noting that otherwise relevant and admissible evidence can be excluded due to a danger of, *inter alia*, confusing the issues or needlessly presenting cumulative evidence.).

Lastly, the Government seeks to introduce evidence, pursuant to Rule 404(b), that Shun falsified a photocopy of her expired U.S. passport because she needed a second form of identification to gain access to a business site. The Court determines that Shun's falsification of a photocopy of her expired passport is not relevant to the crimes charged here nor is it offered for a proper purpose under Rule 404(b). Further, because this evidence has little to no probative value with respect to the tax crimes enumerated in the Superseding Indictment, the Court finds that its probative value is substantially outweighed by its tendency to create unfair prejudice.

For these reasons, the Court concludes that the Government is permitted to introduce evidence of Shun's failure to file federal corporate tax returns on behalf of BTL for the tax years of 2010 and 2011, but is precluded from introducing any evidence of Shun's failure to file New York state corporate tax returns on behalf of BTL during this same time period. The Government is also precluded from offering any evidence that Shun falsified a photocopy of her expired United States passport.[6]

### Shun's Motion for Immediate Disclosure of Jencks, Brady and Giglio Material

Defendant Shun has moved for the immediate production of all *Jencks* material, as well as the immediate production of all *Brady* or *Giglio* material. During the oral

---

[6] During oral argument, the Government submitted that should the Court deny its request to introduce evidence of Shun's falsification of her expired passport during its case-in-chief, the Government would still seek to impeach Shun with this conduct in the event she testifies at trial. The Court will address this issue at the time of trial, in the event defendant Shun elects to testify.

argument on August 20, 2021, the Government informed the Court that there is no *Brady* or *Giglio* material in existence related to this case, and that it has previously represented this fact to defense counsel. Thus, this portion of defendant Shun's motion is denied as moot.

Section 3500 of Title 18 of the United States Code requires that the government, on motion of defendant, disclose a government witness's prior statements that are in the government's possession and relate to the subject matter of the witness's direct testimony ("3500 material"). *See also Jencks v. United States*, 353 U.S. 657 (1957); Fed. R. Crim. P. 26.2 (procedure for producing a witness statement). Statements are not required to be produced, by law, until after the witness has testified on direct examination, and the Court cannot mandate that they be produced sooner. *See* 18 U.S.C. §3500(a); Fed. R. Crim. P 26.2(a). During oral argument, the Government represented that it would produce all *Jencks* material one week before trial. Because the Government has represented that it will provide defendants with all *Jencks* material in advance of trial, and because the Court cannot require a party to produce witness statements any sooner than what is prescribed by the Federal Rules of Criminal Procedure, defendant Shun's motion for immediate disclosure of *Jencks* material is denied.[7]

---

[7] During oral argument, the Government indicated that it offered to disclose *Jencks* material earlier than one week prior to trial, provided that counsel for Shun would disclose any statements of anticipated defense witnesses at that time. However, defense counsel had refused. Upon hearing about this exchange, the Court informed counsel that both the Government and the defendants would receive a fair trial in this matter and that there would be no ambushing of one party by the other. The Court noted that if defendant called a witness and there was a statement subject to *Jencks* that had not previously been disclosed, the Government would have as much time as needed to prepare for cross-examination of the witness. The trial in this matter will begin on September 8, 2021. While this Court cannot order that witness statements be turned over in advance of the witness's testimony, the parties are encouraged to work together regarding discovery of witness statements to prevent unnecessary delays during the trial.

<u>*Shun's Motion for Immediate Disclosure of Grand Jury Material*</u>

Defendant Shun requests immediate disclosure of all grand jury materials. A defendant is entitled to disclosure of grand jury testimony that constitutes *Jencks*, *Brady* or *Giglio* material. Otherwise, a defendant is not entitled to inspect grand jury minutes and evidence without producing "concrete allegations of government misconduct." *United States v. Leung*, 40 F.3d 577, 582 (2d Cir. 1994). Thus, to be entitled to disclosure of grand jury proceedings, a defendant must show a particularized need that outweighs the strong government and public policy interests in the secrecy of grand jury proceedings. *See United States v. Ulbricht*, 858 F.3d 71, 106-107 (2d Cir. 2017). *See also United States v. Ayeki*, 289 F. Supp. 2d 183, 186 (D. Conn. 2003) ("grand jury proceedings carry a presumption of regularity, and a review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct."). Defendant Shun has failed to make any showing of irregularity or Government misconduct here.[8]

---

[8] The Court rejects defendant's contention that she is entitled to inspect grant jury minutes in preparation for trial because the Government intends to introduce evidence of defendant's failure to file tax returns on behalf of BTL in 2010 and 2011 pursuant to Federal Rule of Evidence 404(b). Defendants are not entitled to grand jury materials which are not also *Brady*, *Giglio* or *Jencks* material in order to better prepare for trial. *See United States v. Larson*, 07 CR 304, 2012 U.S. Dist. LEXIS 133250 (WDNY Sept. 18, 2012) ("merely stating the desire to make a vigorous defense in general…does not show a particularized need for grand jury testimony"). The Court also rejects defendant's contention that if the charge of the failure to file tax returns in 2010 and 2011 was presented to the grand jury and rejected, the Government would be committing misconduct by attempting to introduce this evidence at trial. First, Rule 404(b) evidence is not limited to conduct for which a defendant has been indicted or convicted. *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, n. 5 (SDNY 2006) (noting that even conduct for which a defendant has been acquitted may be admissible as Rule 404(b) evidence, provided the other requirements are met). Further, grand jury proceedings are presumed valid, and it is the prerogative of the prosecutor to determine what evidence is to be presented to the grand jury as well as what charges will ultimately be included in an indictment. Defendant's mere speculation that the grand jury must have considered and rejected evidence that Shun failed to file tax returns on behalf of BTL in 2010 and 2011 is not a legitimate basis for the Court to require disclosure of grand jury material. *See United States v. Dacunto*, 00 Cr. 620, 2001 U.S. Dist. LEXIS 42 (SDNY Jan. 4, 2001) (speculative and conclusory allegations of misconduct are insufficient to warrant the "extraordinary relief" of disclosure of grand jury minutes); *United*

As noted above, the Government has represented that there is no *Brady* or *Giglio* material to disclose in this case, and that it will disclose *Jencks* material in advance of trial. Defendant Shun's request for the disclosure of any additional grand jury material is denied.

<u>Shen's Motion to Dismiss the Indictment</u>

On March 27, 2019, defendant Shen filed a motion to dismiss Count 1 of the Superseding Indictment on the grounds that the conspiracy charge was time barred based on his withdrawal from the conspiracy. (Dkt. No. 79) On May 30, 2019, Judge Roemer issued a Report and Recommendation recommending that Shen's motion to dismiss be denied without prejudice to Shen's ability to raise the statute of limitations and withdrawal defenses at the trial of trial. (Dkt. No. 93) This Court later adopted the recommendation. (Dkt. No. 113). Defendant Shen now renews his motion to dismiss on the grounds that Count 1 of the Superseding Indictment is time barred. 9Dkt. No. 204)

The statute of limitations for a conspiracy to commit tax fraud in violation of Section 371 of Title 18 of the United States Code is six years. *See* 18 U.S.C. §6531. Where, as here, a conspiracy statute requires proof of an overt act, the statute of limitations runs from the date of commission of the final overt act. *Id*.; *United States v. Flaherty*, 295 F.3d 182, 192 (2d Cir. 2002) ("[W]here the government has shown that a conspiracy existed and that a given defendant was a member of it, his membership is presumed to continue until the last overt act by any of the co-conspirators, unless defendant proves the conspiracy was terminated or that he took affirmative steps to withdraw."). Therefore,

---

*States v. Sullivan*, 1:02 Cr. 1144, 2004 U.S. Dist. LEXIS 1838 (SDNY Fed. 5, 2004) (rejecting defendant's argument that a review of grand jury material was "appropriate ensure that the grand jury considered the same statements that will be offered at trial.").

unless a conspirator produces affirmative evidence of his withdrawal, his participation in a conspiracy is presumed to continue until the last overt act by any of the conspirators. *United States v. Komunyaka*, 658 F.3d 140, 143 (2d Cir. 2011).

On December 15, 2015, Shen signed a tolling agreement which tolled the statute of limitations for three months from January 14, 2016 until April 14, 2016, making the applicable statute of limitations for Shen, as to Count 1, six years and three months. The grand jury returned the Indictment on June 28, 2016. Six years and three months prior to the return of the Indictment is March 28, 2010. Thus, to successfully assert a statute of limitations defense here, Shen must prove that he withdrew from the conspiracy prior to March 28, 2010, or that the conspiracy ended before that time.

In support of his argument that the conspiracy ended prior to March 28, 2010, Shen cites a portion of the Government's brief in support of its motion to introduce Rule 404(b) evidence where the Government states that "after ending her conspiracy with Shen", Shun notified the IRS on December 7, 2009 that BTL was ceasing to conduct business. Contrary to defendant's contention, the Court does not find this statement by the Government to be proof that the Government "now appears to agree that the conspiracy ended well before March 28, 2010." Likewise, this statement by the Government, made in a memorandum of law addressing a separate topic, does not require the Court to dismiss the conspiracy charge as a matter of law. The Government has indicated that it will offer evidence demonstrating that even though Shun filed a "final return" for BTL showing that it ceased to operate on October 31, 2009, BTL did, in fact, continue to earn income through May 26, 2011. Further, the Government alleges that Shun filed a fraudulent individual joint tax return, in the names of both defendants, on April 23, 2010.

Thus, the Government has not alleged or conceded that the conspiracy ended on December 7, 2009, and has instead specifically charged an overt act occurring on April 23, 2010. Should the Government's proof at trial fail to show that at least one overt act occurred within the relevant time period, Shen may raise a statute of limitations defense at that time.

Shen further argues, in his renewed motion to dismiss, that there is evidence he withdrew from the conspiracy prior to March 28, 2010. This evidence includes, *inter alia*, (1) that he and Shun separated in 2009; (2) that Shun notified the IRS that BTL ceased doing business in 2009; and (3) that Shen traveled to China in March 21, 2010 and remained there for three months. As this Court previously instructed when it denied Shen's prior motion to dismiss, whether and when Shen withdrew from the conspiracy is a factual determination that is to be made by the trier of fact, namely the jury. *See United States v. Hoskins*, 73 F. Supp. 3d 154 (D. Conn. 2014) (denying a defendant's motion to dismiss an indictment based on his claimed withdrawal or resignation from the conspiracy because "defendant's withdrawal and statute of limitations defenses require resolution of factual disputes [and] must be determined by a jury in the first instance on the basis of a full evidentiary record."); *United States v. Carnesi*, 461 F. Supp. 2d 97, 99 (EDNY 2006) (the fact that defendant terminated relations with co-conspirators during the time period of the conspiracy did not necessarily prove withdrawal and "[t]he allegations raised in the Defendant's motions, specifically whether Defendant actually participated in the conspiracy and whether he withdrew from the conspiracy, are issues of fact for the jury to decide.").

For these reasons, and for the reasons previously stated in Judge Roemer's Report and Recommendation issued on May 30, 2019 (Dkt. Nos. 93, 113), defendant Shen's motion to dismiss Count 1 of the Superseding Indictment is denied without prejudice to Shen's ability to raise statute of limitations and withdrawal defenses during the trial.

## CONCLUSION

For the foregoing reasons, defendant Shun's motion for relief based on alleged Sixth Amendment violations is denied and defendant Shun's motions for immediate disclosure of *Jencks*, *Brady*, *Giglio* and grand jury materials are denied. The Government's motion to introduce evidence of other crimes, wrongs or bad acts is granted in so far as the Government may introduce evidence that Shun failed to file federal corporate tax returns on behalf of BTL for the fiscal years of 2010 and 2011, but is otherwise denied. Defendant Shen's motion to dismiss Count 1 of the Indictment is denied without prejudice to his ability to raise a statute of limitations of withdrawal defense at the time of trial.

**SO ORDERED.**

Dated:      August 25, 2021
            Buffalo, New York


                                    *s/Richard J. Arcara*
                                    HONORABLE RICHARD J. ARCARA
                                    United States District Judge